IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRY L. S. DORSEY, #193-579, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR 17-844 |
| MICHAEL STOUFFER, et al., | * | |
| Defendants. | * | |

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Michael Stouffer, Frank Bishop, Jr., Richard Roderick, and Charlotte Zies's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 14). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6. (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

### I. BACKGROUND[1]

Plaintiff Terry L. S. Dorsey is currently incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Compl. at 3, ECF No. 1).[2]

On March 4, 2014, Gregg Hershberger, the former Secretary of the Department of Public Safety and Correctional Services ("DPSCS"), signed NBCI Information Bulletin

---

[1] Unless otherwise noted, the facts outlined here are set forth in Dorsey's Complaint (ECF No. 1). To the extent the Court discusses facts that Dorsey does not allege in his Complaint, they are uncontroverted and the Court views them in the light most favorable to Dorsey. The Court will address additional facts when discussing applicable law.

[2] Citations to the Complaint refer to the pagination the Court's Case Management/Electronic Case Files ("CM/ECF") system assigned.

("IB") #02-14, creating the security designation of Maximum Level II, effective immediately. (See Zies Decl. at ¶ 4, ECF No. 14-4; see also NBCI IB #02-14, ECF No. 14-5). The following criteria determine Maximum Level II security suitability:

a. Serious assault on staff or inmate within the past five years;

b. Escape from Secure Confinement housing;

c. Incident resulting in a death of another while incarcerated;

d. Sexual assault on staff or inmate while incarcerated; and

e. Verified behavior detrimental to the operation or security of a DPSCS facility, to include STG [Security Threat Group] activity, within the past five years.

(NBCI IB #02-14 at 1).

On August 7, 2014, Zies, a Correctional Case Management Specialist ("CCMS") at NCBI since 2007, conducted an annual security review of Dorsey using a Security Reclassification Instrument ("SRI"). (See Compl. at 3; Zies Decl. ¶ 5; see also Aug. 7, 2014 SRI, ECF No. 14-6). Zies recommended that Dorsey's security level be increased from Maximum I security to Maximum II. (See Zies Decl. ¶ 6; see also Aug. 7, 2014 SRI). Zies used a "Discretionary Override" based on Dorsey's "extensive history of adjustments and his verified behavior detrimental to staff/inmates/institution, which included inciting inmates to attack a female staff member and his involvement as an accomplice to an inmate assault in a Medical holding cell in 2014." (Zies Decl. ¶ 6; see also Mar. 3, 2014 Notice of Assignment to Administrative Segregation, ECF No. 14-7).

On August 13, 2014, Roderick, Manager of the NBCI Case Management Unit since 2010, conducted an optional administrative review of the SRI and concurred with

Zies's recommendation. (See Compl. at 4; Zies Decl. ¶ 7). On August 19, 2014, Bishop, the Warden of NBCI, reviewed Dorsey's SRI and approved the decision to reclassify him to Maximum II. (See Compl. at 4; Roderick Decl. ¶ 2, ECF No. 14-8). Dorsey was notified of the decision that same day. (See Compl. at 4).

Dorsey contacted the case management unit to challenge the decision. (Id.). On September 16, 2018, Roderick told Dorsey that "the decision had undergone several levels of administrative review, would not be changed, and that [Dorsey's] security level would be reviewed again in August 2015." (Id.). Subsequently, Dorsey submitted a complaint to the Inmate Grievance Office ("IGO"), IGO Case No. 20141871. (Roderick Decl. ¶ 9). On May 20, 2015, an Administrative Law Judge ("ALJ") heard the case. (Id. ¶ 10).

On August 4, 2015, CCMS Shawn Gainer completed another SRI of Dorsey and recommended that Dorsey remain assigned to Maximum II. (See Zies Decl. ¶ 12; Roderick Decl. ¶ 11; Aug. 4, 2015 SRI, ECF No. 14-10). Zies, as the Acting Case Management Supervisor, and Jeff Nines, Assistant Warden, reviewed the SRI and both concurred with Gainer's recommendation. (See Zies Decl. ¶ 12). On August 13, 2015, Bishop approved the recommendation. (See Aug. 4, 2015 SRI). On August 12, 2015, Dorsey filed another complaint with the IGO, IGO Case No. 20151425, regarding the August 4, 2015 reclassification. (See Aug. 4, 2015 Appeal of Administrative Remedy Response, ECF No. 14-11).

On August 31, 2015, the ALJ rendered her decision regarding Dorsey's first complaint, IGO Case No. 20141871, concluding that the grievance was meritorious in

3

part and proposing that the August 2014 decision to reclassify Dorsey to Maximum II status be reversed and remanded for a new reclassification. (See IGO Case No. 20141871 Record at 23–24, ECF No. 14-9). DPSCS Secretary Stephen T. Moyer affirmed the proposed decision and order on September 10, 2015. (Id. at 3).

On October 9, 2015, Gainer completed an "Out-of-Schedule Security Review per the Order of the Secretary," and recommended that Dorsey be assigned to Maximum II security by using a Discretionary Override. (See Zies Decl. ¶ 16; Roderick Decl. ¶ 15). John White, Acting Case Management Supervisor, reviewed the SRI and recommended that Dorsey remain assigned to Maximum I. (See Zies Decl. ¶ 17; Roderick Decl. ¶ 16). On October 15, 2015, Zies and Roderick also reviewed the SRI and did not agree with Gainer's recommendation. (See Zies Decl. ¶18; Roderick Decl. ¶ 17). Thereafter, Assistant Warden Nines reviewed the SRI and disapproved Dorsey's reclassification from Maximum I to Maximum II. As a result, Dorsey remained assigned to Maximum I security. (See Zies Decl. ¶¶ 18–19; Roderick Decl. ¶¶ 17–18; Oct. 9, 2015 SRI, ECF No. 14-12).

On October 6, 2015, NBCI's IGO Coordinator, Gary Sindy, told Russell A. Neverdon, Sr., Executive Director of the IGO, to advise him that Dorsey was no longer classified as Maximum II security level, thus rendering his complaint in IGO Case No. 20151425 moot. (See Zies Decl. ¶ 20; Roderick Decl. ¶ 19). On October 19, 2015, Neverdon issued a Revised Pre-Hearing Order and Dismissal of IGO Case No. 20151425, noting that Dorsey had been reclassified to Maximum I effective October 15, 2015. (See Oct. 19, 2015 Copy of Revised Pre-Hearing Order and Dismissal, ECF No. 14-13).

4

Subsequent SRIs, completed on October 24, 2016 and October 16, 2017, approved Dorsey to remain at the Maximum I security level. (See Zies Decl. ¶ 22; Roderick Decl. ¶ 21). Dorsey remained classified as Maximum I security level at NBCI as of February 8, 2018. (See Zies Decl. ¶ 23; Roderick Decl. ¶ 22).

On March 27, 2017, Dorsey filed his Complaint. (ECF No. 1). Dorsey alleges that Defendants violated his constitutional rights when they reclassified him from Maximum I to Maximum II security level in August 2014. (Compl. at 3–6). Dorsey claims that he "did not receive prior notice of the factual basis for the reclassification and did not receive an opportunity for a hearing at NBCI to challenge the reclassification." (Id. at 6). He further alleges that Defendants' decision to assign him to Maximum II was arbitrary and capricious, and in violation of his Eighth and Fourteenth Amendment rights. (Id. at 5). Construed as a civil rights action under 42 U.S.C. § 1983 (2018), the Complaint requests $80,000 in compensatory damages and $80,000 in punitive damages against each Defendant. (Id. at 6).

## II.    DISCUSSION

**A.    <u>Conversion of Defendants' Motion</u>**

Defendants' Motion is styled as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule

12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was

6

needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration, explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

Here, the Court concludes that both requirements for conversion are satisfied. Dorsey was on notice that the Court might resolve Defendants' Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented extensive extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Clerk informed Dorsey about the Motion and the need to file an opposition (June 5, 2018 Letter, ECF No. 23). Dorsey filed an Opposition that included materials in support of his claims but did not include a request for more time to conduct further discovery. Because the Court will consider documents outside of Dorsey's Complaint in resolving Defendants' Motion, the Court will treat the Motion as one for summary judgment.

**B.    Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). Supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed.R.Civ.P. 56(c)(4).

Following a properly supported motion for summary judgment, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to

make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

C. **Analysis**

Defendants argue that Dorsey has failed to allege a deprivation of any right, constitutional or statutory, which would entitle him to relief under § 1983. Specifically, they assert that the initial security classification did not constitutionally injure Dorsey and that its reversal on administrative appeal was not evidence of a due process violation. The Court agrees.

The threshold inquiry in evaluating a § 1983 claim is whether the plaintiff has been deprived of any right secured by the U.S. Constitution or federal law. Baker v. McCollan, 443 U.S. 137, 140 (1979). Dorsey contends Defendants' decision to assign him to Maximum II violated the Eighth and Fourteenth Amendments, but the case law does not support these theories.

1. **Eighth Amendment**

Under the Eighth Amendment to the Constitution, conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." Id. In order to establish that he

9

suffered a cruel and unusual punishment, a prisoner must prove that: (1) "the deprivation of [a] basic human need was *objectively* sufficiently serious;" and (2) "*subjectively* the officials acted with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003).

Dorsey notes that Maximum II entails "more restricted confinement," (Compl. ¶ 15), and alleges, without more, that his constitutional rights were violated. But his Complaint fails to allege any serious or significant physical or emotional injury that resulted from his assignment to Maximum II. Therefore, the Court will dismiss his Eighth Amendment claim.[3]

### 2. Fourteenth Amendment

Dorsey alleges that he "did not receive prior notice of the factual basis for the reclassification and did not receive an opportunity for a hearing at NBCI to challenge the

---

[3] In his Opposition, Dorsey states for the first time that, as a result of his wrongful placement in Maximum II, he was deprived of a liberty interest because he was unable to request reconsideration for parole, earn good time credits, practice his religion, or have access to certain jobs, social therapy, and psychological treatment. (Pl.'s Opp'n. at 2, 7, 9–10). A plaintiff may not, however, amend his pleadings through his briefs. See Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998). Accordingly, the Court does not consider those allegations here. Dorsey may file a separate action if he so chooses.

reclassification." (Id. at 6). Dorsey does not cite to any rule requiring prior notice of the factual basis for a security level reclassification or guaranteeing him an opportunity to be heard to challenge any reclassification. The Court will, therefore, construe Dorsey's claim regarding the reclassification procedure as a due process claim and analyze it under that Fourteenth Amendment jurisprudence.

The U.S. Supreme Court has explained how to determine whether a housing assignment within a prison invokes a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." Meachum v. Fano, 427 U.S. 215, 224 (1976) (rejecting prisoners' claim that their transfer to a different state prison with worse conditions implicated a liberty interest because it was within the "normal limits or range of custody" authorized by their convictions). Liberty interests protected by due process generally extend only to those conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Sandin, the Court held that an inmate's thirty-day disciplinary segregation, which was overturned on appeal and did not affect the duration of the prison sentence, was not the type of deprivation that implicates a constitutional liberty interest giving rise to due process rights and supporting a § 1983 claim. Id. at 486.

The United States Court of Appeals for the Fourth Circuit has also held that inmates have no due process claim based on placement in administrative segregation.

11

Beverati v. Smith, 120 F.3d 500, 502–04 (4th Cir. 1997) (rejecting a due process claim by inmates held in administrative segregation for six months after disciplinary charges were resolved). Even though the conditions in segregation were markedly "more burdensome than those imposed on the general prison population," the Fourth Circuit concluded they were "not so atypical" that they "imposed a significant hardship in relation to the ordinary incidents of prison life." Id. at 504 (noting the inmates' claims that segregation included vermin-infested cells, human waste in cells, leaking toilets, unbearable heat, less food, reduced access to clean clothes and linens, reduced out-of-cell time, no outdoor recreation time, and no educational or religious services). The Fourth Circuit has also held that "[i]n formulating and executing decisions relating to cell assignments, we must allow prison authorities the discretion to take into account the particular safety and security concerns" facing inmates. See Veney v. Wyche, 293 F.3d 726, 734 (4th Cir. 2002) (addressing segregation of homosexual male inmates).

Here, Dorsey has neither alleged nor offered evidence that the conditions of Maximum II during his term of confinement meet the "atypical and significant hardship" standard. Maximum II determination, like administrative segregation, is within the discretion of prison authorities charged with keeping their facilities safe and secure. As a result, the Court concludes that Dorsey has failed to establish a due process violation arising from his assignment to and term in Maximum II.

With regard to procedural due process, several courts have concluded that "[t]here is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." Morissette v. Peters, 45 F.3d 1119, 1122 (7th Cir. 1995)

(citing Harper v. Lee, 938 F.2d 104, 105 (8th Cir. 1991)); see also Young v. Hoffman, 970 F.2d 1154, 1156 (2nd Cir. 1992) (finding the "administrative reversal constituted part of the due process protection [inmate] received, and it cured any procedural defect that may have occurred"), cert. denied, 114 S.Ct. 115 (1993).

Further, in the prison context, "the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process." Kitchen v. Ickes, 116 F.Supp.3d 613, 629 (D.Md. 2015) (citing Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987)), aff'd, 644 F.App'x 243 (4th Cir. 2016); see also Riccio v. County of Fairfax, 907 F.2d 1459, 1466 (4th Cir. 1990) (noting "a state does not necessarily violate the Constitution every time it violates one of its rules"). "Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minimal requirements are met." Kitchen, 116 F.Supp.3d at 629 n.6 (citing Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996)).

Here, to the extent Dorsey contends that Defendants initially misapplied the SRI or Maximum II criteria, he has not established a violation of due process because the constitutional minimal requirements discussed above have been met.[4] He also was able to appeal the determination of his Maximum II designation, and the ALJ's decision reversing Dorsey's reclassification and restoring his Maximum I security level cured any earlier procedural due process violation. See Morissette, 45 F.3d at 1122; Young, 970

---

[4] Because Dorsey has failed to show his constitutional rights were violated, he has also failed to allege sufficient facts to support a finding of supervisory liability against any Defendant not directly involved in Dorsey's reclassification, like Stouffer.

13

F.2d at 1156. Even if he did not receive prior notice of the factual basis for the reclassification or the opportunity to participate in the appeal hearing, per prison regulations, that also would not amount to a violation of his due process rights. See Kitchen, 116 F.Supp.3d at 629 n.6. Consequently, Dorsey fails to establish a procedural due process violation.

In sum, Dorsey has not identified evidence showing there is a genuine dispute of material fact that his Eighth or Fourteenth Amendment rights may have been violated. Dorsey has not alleged or established the threshold constitutional injury necessary for § 1983 liability. Consequently, Dorsey's § 1983 claim fails as a matter of law. Accordingly, the Court will grant Defendants' Motion.[5]

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 14), construed as a motion for summary judgment, is granted. Judgment will be entered in favor of Defendants. A separate Order follows.

Entered this 29th day of November, 2018.

/s/
George L. Russell, III
United States District Judge

---

[5] Having found no constitutional violation, the Court need not address Defendants' claim of qualified immunity.

14